IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AZHAR HAMMOODI ALI, )
)
        Plaintiff, )
)
    vs. ) Civil Action No. 1:16-216
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
        Defendant. )
)

AMBROSE, Senior District Judge

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 10 and 12]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Plaintiff's Motion [ECF No. 9] is granted and Defendant's Motion [ECF No. 11] is denied.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about August 7, 2013. [ECF No. 7-5, Ex. 1D]. In her application, she alleged that she was disabled

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

due to colon issues, female problems, migraines, and heart issues, and that she had been unable to work since January 25, 2013. [ECF No. 7-6, Ex. 2E]. Administrative Law Judge ("ALJ") Wayne Stanley held a hearing on June 23, 2015, at which Plaintiff was represented by counsel. [ECF No. 7-2, at 26-51]. Plaintiff appeared at the hearing and testified on her own behalf, with the aid of an interpreter. Id. A vocational expert also was present at the hearing and testified. Id. at 45-51. In a decision dated July 31, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. Id. at 10-21. On, July 27, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-3. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by

2

treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to his previous employment (steps 1-4).

3

Dobrowolsky, 606 F.2d at 406.  Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).  Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B.    RFC- Migraine Headaches

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including headaches, depression, post-traumatic stress disorder, and anxiety.  [ECF No. 7-2, at 12].  He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she was limited to jobs with little independent decision making, no work with the public, occasional contact with supervisors and coworkers, and only simple tasks, decisions, and instructions.  Id. at 15-19.

Plaintiff argues that the ALJ erred in determining that Plaintiff's headaches were "severe," but then failing to cite any limitations stemming from her headaches in his RFC analysis.  [ECF No. 10, at 9-13].  Plaintiff also complains that, in so doing, the ALJ inappropriately gave great weight to the non-examining state agency physician, Dr. Nghia Van Tran, while "distorting" and/or "ignoring" the records of Plaintiff's treating neurologist, Dr. Erica Grazioli.  Id.  After careful review of the record, including the documentary evidence, the ALJ's opinion, and the hearing testimony, I agree that remand is necessary on this issue.

An ALJ must base his RFC assessment on all of the relevant evidence of record.  20 C.F.R. § 416.945(a).  In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  That is, the ALJ's

decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

In determining whether a claimant's complaints of migraine-related symptoms are credible, courts look at a number of factors, including: whether the claimant has been diagnosed with migraines; whether the claimant has received treatment and medication; the length of the history of complaints and treatment related to migraines; the migraines' alleged severity and frequency; the symptoms the claimant alleges the migraines cause; and whether the record contains any statements from doctors questioning the alleged frequency or severity. Grimes v. Berryhill, Civil Action No. 15-1557, 2017 WL 746798, at *2 (W.D. Pa. Feb. 27, 2017) (citing Kulbacki v. Colvin, Civ. No. 15-297, 2016 WL 2609984, at *6 (W.D. Pa. May 6, 2016)). With respect to migraines, the "ALJ must be particularly diligent in making credibility determinations . . . because laboratory tests cannot prove their existence." Thomas v. Colvin, No. 1:14-cv-00274-TFM, 2015 WL 4067147, at *5 (W.D. Pa. July 2, 2015). Accordingly, "when presented with documented allegations of symptoms consistent with the claimed disorder, it is not appropriate for an ALJ to reject a claimant's testimony solely based on an absence of objective evidence." Grimes, 2017 WL 746798, at *2.

Despite this admonition, the ALJ in this case repeatedly cited the lack of objective evidence in discrediting Plaintiff's migraine-related claims. For example, he stated that, although Plaintiff "complained of daily headaches in November 2013, . . . there are no objective findings during this period of any neurological problems." [ECF No. 7-2, at 16]. Similarly, the ALJ remarked that, in March 2014, the neurologist Plaintiff saw for headaches noted that she had no

5

neurological findings, grossly normal memory, and was alert and cooperative with a normal affect. Id. at 17 (citing Ex. 8F). The ALJ acknowledged that, in January 2015, neurologist records still showed continued complaints of daily headaches, but the ALJ discounted those complaints because "an examination revealed she appeared healthy and alert, had a normal affect, and had a normal neurological examination with normal Romberg and tandem gait testing." Id. Similarly, the ALJ downplayed Plaintiff's report in March 2015 that her headaches had not improved because "an examination again showed no neurological deficits." Id. The ALJ also gave great weight to non-examining state agency physician Nghia Van Tran, who concluded that Plaintiff could perform a full range of light work, because, inter alia, her opinion was "consistent with treating physician and neurologist notes, *which fail to reveal physical examination findings consistent with any significant physical limitations*." Id. at 18-19 (citing Exs. 1A, 7F, 8F, and 14F) (emphasis added).[2] The ALJ does not acknowledge any limitations stemming from Plaintiff's migraines, and none are evident in the RFC finding.

Moreover, the ALJ repeatedly made these references despite a record replete with documentation of Plaintiff's complaints of symptoms consistent with migraine headaches. In addition to Plaintiff's own testimony [ECF No. 7-2, at 34-42], the medical records reflect that Plaintiff treated with a neurologist for her headaches from at least December 2013 and that she was diagnosed with migraines at that time. [ECF No. 7-16, Ex. 14F]. The December 2013 Northshore Neurology records note that Plaintiff complained of having had headaches for about

---

[2] To the extent the ALJ relies on Dr. Tran's report in support of his headache analysis, his decision to afford Dr. Tran's opinion that Plaintiff was capable of a full range of light work "great weight" is troublesome for other reasons as well. Although an ALJ may assign greater weight to a non-examining state agency consultant than a treating physician in appropriate circumstances, see 20 C.F.R. § 416.927(e), it is unclear in this case whether Dr. Tran even considered Plaintiff's headaches in reaching her conclusions. In addition to the fact that Dr. Tran did not review any of the Northshore Neurology records documenting Plaintiff's treatment for migraines (because they largely post-dated her opinion), her report does not discuss headaches or even mention them as one of Plaintiff's identifiable impairments. See ECF No. 7-3 (Ex. 1A). Rather, the only medically determinable physical impairments listed in the report are hypertension, gastritis and duodenitis, and cardiac dysrhythmias. See id. at 55.

five years and reported experiencing headaches with specific triggers such as not sleeping well or feeling stressed on an irregular basis and lasting 1-2 days at a time. Id. at 584. Plaintiff described her headaches as pressure and gradually building sharp pain with associated phonophobia, sonophobia, nausea, blurred vision, and numbness. Id. She also stated she was unable to sleep with the headaches. Id. Plaintiff treated with Northshore Neurology regularly through the date of the hearing, during which time she continued to report frequent headaches and associated symptoms. [ECF Nos. 7-12 (Ex. 8F), 7-16 (Ex. 14F)]. During this time period, Plaintiff was prescribed various headache medications, including amitriptyline (Elavil) and naproxen initially, and, later, Neurontin and Fioricet. Id. On March 11, 2015, Plaintiff's last appointment prior to her June 2015 hearing, she continued to report near-daily headaches that had not improved at all since her last visit along with blurred vision and nausea. [ECF No. 7-12 (Ex. 8F)]. She stated that she did not think that the amitriptyline had helped much and that the Neurontin had made the most difference. She said she thought she had tried Topamax in the past, but that she experienced side effects even at a low dose. Id. Plaintiff's doctor advised her she could discontinue the amitriptyline, and he increased her dosage of Neurontin. Id. The records from Plaintiff's primary care physician, Roger Esper, D.O., and from her mental health providers also reflect a history of migraines. [ECF Nos. 7-10 (Ex. 5F), 7-11 (Ex. 7F), 7-14 (Ex. 11F), 7-15 (Ex. 13F), 7-17 (Ex. 15F)]. There is no indication in the treatment records that Plaintiff's neurologist or any other treating physician ever questioned whether Plaintiff's migraines were as debilitating as she claimed them to be.

In short, Plaintiff's testimony and the medical records both address the alleged history, symptomology, severity, and frequency of the migraines as well as the medication and treatment Plaintiff has been prescribed. To the extent the ALJ rejected this evidence solely based on an absence of objective findings, such action was erroneous for the reasons set forth above. If the

ALJ had additional grounds for discrediting Plaintiff's testimony and/or the medical records regarding her headaches, he failed to explain those grounds adequately, and, consequently, I am unable to review them here. This error is of particular concern here where the vocational expert testified that there would be no jobs available in the economy for an individual who would miss more than one day of work per month or need to take breaks at unscheduled times. [ECF No. 7-2, at 48]. For all of these reasons, remand is required on this issue.

C.   **RFC - Mental Impairments**

Plaintiff asserts that the ALJ failed to properly evaluate her mental impairments in formulating Plaintiff's RFC. [ECF No. 10 at 13-20]. Specifically, Plaintiff argues that ALJ failed to assign appropriate weight to the opinions of her treating psychiatrist, Ethan Ittner, D.O., including a medical source statement he filled out for the Social Security Administration in November 2013 indicating that Plaintiff had marked restrictions in her ability to: make judgments on simple, work-related decisions; understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. Id. (citing ECF No. 7-10, Ex. 5F at 326-327). The ALJ gave greater weight to the December 5, 2013 opinion of non-examining state agency psychologist Sandra Banks who found no more than moderate limitations and opined, inter alia, that, although Plaintiff's ability to understand and remember complex or detailed instructions appeared limited, she could be expected to understand, carry out, and remember simple, one and two-step instructions. [ECF No. 7-2, at 19 (citing Ex. 1A)]. Plaintiff's argument is without merit.

The amount of weight afforded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a

non-examining source. 20 C.F.R. § 416.927(c)(1).[3] In addition, the ALJ generally will give more weight to opinions from a treating physician "since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927[(d)](2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 416.927 (2017); 20 C.F.R. § 416.920c (2017).

Here, the ALJ here gave little weight to Dr. Ittner's November 2013 Medical Source Statement because, inter alia, it was inconsistent with psychiatric progress notes which showed some disturbance with mood and affect but not to a disabling degree, and was unsupported by mental status examinations which consistently indicated that Plaintiff's memory, attention, and concentration were within normal limits. [ECF No. 7-2, at 19 (citing Exs. 5F, 11F, 13F, and 16F)]. After careful review, I find that the exhibits that the ALJ cited are consistent with his conclusions in this regard. See, e.g., ECF No. 7-10, Ex. 5F at 320, 324; ECF No. 7-14, Ex. 11F at 478-521; ECF No. 7-17, Ex. 16F at 618-621. In light of the conflicting evidence, the ALJ acted well within his authority when he chose to give greater weight to non-examining psychologist, Sandra Banks, who examined the medical evidence of record as of November 2013 and found that Plaintiff had no worse than moderate limitations related to her mental health impairments. See id. ECF No. 7-2 at 19 (citing Ex. 1A). The ALJ cited record evidence to support his evaluation of Dr. Banks's opinions, including progress notes showing that Plaintiff experienced improvement with treatment, and mental status examinations showing problems with mood and affect, but normal attention and concentration. See id. (citing Exs. 5F, 11F, 16F).[4] The ALJ did not discount Plaintiff's mental health symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established mental health impairments, including a limitation to jobs with little

---

[4] Although Dr. Banks's mental RFC assessment is contained in the same report as Dr. Tran's physical RFC determination, it does not suffer the same flaws. Most significantly, unlike Dr. Tran (who neither mentioned Plaintiff's headaches nor reviewed Plaintiff's neurology records concerning headaches), Dr. Banks reviewed the pertinent mental health records then available to her, including Dr. Ittner's November 2013 medical source statement, which Dr. Banks specifically discussed and discounted in her opinion. See ECF No. 7-3 (Ex. 1A), at 58-61; see also ECF No. 7-10, Ex. 5F at 311-327 (documenting that the 2013 Stairways Behavioral Health Records, including Dr. Ittner's statement, were provided to the SSA prior to Dr. Banks's review).

independent decision making, no work with the public, occasional contact with supervisors and coworkers, and only simple tasks, decisions, and instructions. Id. at 15-16.[5]

To the extent Plaintiff argues that the ALJ improperly evaluated her Global Assessment of Functioning ("GAF") scores in evaluating the medical opinion evidence, that argument is without merit. Pl.'s Br. [ECF No. 10] at 16-18. Plaintiff highlights that her mental health providers consistently assigned her a GAF score of around 50 during the course of her treatment, indicating serious symptoms. Id. at 17 (citing Exs. 11F, 13F, 15F). These GAF scores, however, are not dispositive. The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).[6] As courts have explained, however, a particular GAF score does not necessarily correlate to one's ability to work. See, e.g., id. at 75; see also Hillman v. Barnhart, 48 F. App'x 26, 30 & n.1 (3d Cir. 2002) (GAF score of 50 indicates ability to perform some substantial gainful activity). Moreover, the ALJ did not ignore these GAF scores in his analysis. Rather, he acknowledged the scores and explained his decision to assign them little weight. [ECF No. 7-2, at 19]. Among other things, the ALJ noted that the GAF findings were inconsistent with the mental status examinations and Plaintiff's

---

[5] To the extent Plaintiff points to other evidence supporting her position that she has additional mental limitations related to her headaches, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, this support is misplaced.

[6] A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

mental health treatment history. [ECF No. 7-2, at 19]. For these reasons, the ALJ properly refused to give significant weight to the GAF scores at issue.

In short, I find the ALJ appropriately weighed Dr. Banks's and Dr. Ittner's opinions and the other evidence of record in evaluating Plaintiff's mental health impairments and that he supported his findings with substantial evidence. Accordingly, I find no error in this regard requiring remand on this issue alone. In light of my ruling regarding Plaintiff's headaches, however, the ALJ must revisit this issue on remand. If the ALJ's findings regarding Plaintiff's headaches (or any other impairments) change, he must re-assess whether Plaintiff's physical and mental impairments, in combination, create disabling limitations.

### III.   CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately address Plaintiff's headaches as set forth more fully herein. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AZHAR HAMMOODI ALI,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 1:16-216

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 15th day of August, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment [ECF No. 9] is GRANTED to the extent that Plaintiff seeks remand for further consideration, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment [ECF No. 11] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).